IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:23-CR-3056 |
| vs. | |
| PERRION BLUFORD, | ORDER |
| Defendant. | |

The defendant has filed a motion to withdraw his pleas of guilty. Filing 55. A hearing on that motion has been set. Filing 57. The purpose of this order is to set forth, for the parties, how the Court intends to proceed at that hearing.

## BACKGROUND

The defendant was first charged in federal court in 2021 with possessing Ecstasy and marijuana with intent to distribute and possessing a firearm in furtherance of a drug trafficking offense, but that case was dismissed on the government's motion. Case no. 4:21-cr-3001. The parties agree that the basis for dismissal was that samples submitted for testing came back negative. Filing 56 at 1; filing 61 at 2; *see* filing 27 at 2.

The defendant was indicted again in 2023, on three counts: (1) possession of marijuana with intent to distribute it, in violation of 21 U.S.C. § 841; (2) possession of a firearm in furtherance of a drug trafficking crime—specifically, Count 1—in violation of 18 U.S.C. § 924(c); and (3) being an unlawful drug user in possession of a firearm, in violation of 18 U.S.C. § 922(g). Filing 1. Counsel was appointed. Filing 13. The defendant entered into a plea agreement in which he agreed to plead guilty to Counts 1 and 3, and the government agreed

to dismiss Count 2 at sentencing. Filing 27 at 1. The parties agreed, pursuant to Rule 11(c)(1)(C), to a sentence on Count 1 of less than 5 years, and a sentence on Count 3 of 60 to 72 months, sentences to be served concurrently. Filing 27 at 4. In other words, the plea agreement provides for a sentence of 5 to 6 years' imprisonment. *See* filing 27 at 4. The plea agreement also contained a stipulated factual basis for the plea, which provided, as relevant:

> On January 13, 2021, police executed a search warrant at the defendant's residence in Lincoln, Nebraska. During the search, they located a number of pills which, based on their appearance, were suspected to be MDMA pills. They also found a few pounds of suspected marijuana, and suspected prescription medications. Police also located a Masterpiece Arms 5.7 by 28 mm pistol, which was loaded with 20 rounds of ammunition, and a box of additional ammunition. The police also located a total of $8,015 in United States currency in the home and on Bluford's person.
>
> Police were monitoring Bluford's Snapchat account beginning in 2019 and also in 2020. They observed several postings advertising the sale of drugs.
>
> A portion of the seized drugs were sent to the Nebraska State Patrol Crime Laboratory for testing. The portion which was first submitted for testing did not test positive for controlled substances. When the negative tests came back, a second sample from the drugs seized from Bluford's residence were sent in for testing. Suspected marijuana sent in from that sample tested was found to be marijuana.
>
> If this case were to proceed to trial, an investigator with the Lincoln/Lancaster Drug Task Force would testify that based on the

quantity of suspected drugs which were recovered, the manner in which they were packaged, the recovery of a significant amount of money, and the presence of a firearm, those factors are all consistent with the distribution of controlled substances, and inconsistent with possession of drugs solely for personal consumption. The investigator would further testify that those who are involved with distributing illegal drugs will sometimes sell both counterfeit and real drugs. Selling counterfeit drugs to people who believe they are purchasing actual drugs can be profitable.

Filing 27 at 2. The defendant signed a petition to enter guilty plea that incorporated by reference the factual basis in the plea agreement. Filing 26 at 7. And at the change of plea hearing, the defendant admitted the following under oath:

> THE COURT: On January 13th, of 2021, were you in Nebraska?
> THE DEFENDANT: Yes.
> THE COURT: While in Nebraska, on that date, did you have, in your possession, marijuana?
> THE DEFENDANT: Yes.
> THE COURT: Did you know that it was marijuana?
> THE DEFENDANT: Yes.
> THE COURT: Did you have it in your possession with the intent to distribute it to other people?
> THE DEFENDANT: Yes.

- 3 -

Filing 40 at 17. The Court accepted the defendant's plea of guilty on Counts 1 and 3. Filing 42; *see* filing 40 at 19.

Shortly after the Court accepted the defendant's plea, the Magistrate Judge granted the defendant's appointed counsel leave to withdraw, because counsel had accepted a new job. Filing 43; *see* filing 41. New counsel was appointed and appeared. Filing 43; filing 44. After several extensions of the sentencing schedule, *see* filing 29, filing 45, filing 46, filing 47, filing 48, filing 49, filing 50, filing 51, filing 52, the defendant filed the present motion to withdraw his pleas.

## STANDARD OF REVIEW

A defendant may withdraw a plea after the Court accepts it, but before imposing sentence, if the defendant can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2)(B); *see United States v. Forjan*, 66 F.4th 739, 751 (8th Cir. 2023). But when a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise. *Id*. The defendant bears the burden of showing a fair and just reason for withdrawal. *United States v. Eller*, 955 F.3d 730, 733 (8th Cir. 2020).

And, even if the defendant meets that burden, the Court must consider other factors before granting the motion, including whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion. *Id*. There is no *right* to withdraw a plea—the plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom. *United States v. Flynn*, 969 F.3d 873, 877 (8th Cir. 2020).

DISCUSSION

The defendant advances two primary arguments for a "fair and just reason" to withdraw his plea, both sounding in ineffective assistance of counsel. First, he claims that "because of the erroneous advice of counsel, he believed that he would be found guilty of Count 2 at trial based only on evidence of the proximity of the firearm to the drugs." Filing 56 at 2. Second, he says he "also believed that his only options other than a trial on all counts were the 11(c)(1)(C) agreement or to plead straight up to all three counts," because "[h]is prior counsel did not advise him that he could also plead guilty to one or two of the counts and have a trial on the remaining count(s)." Filing 56 at 2-3. In essence, he argues, he would not have accepted the plea agreement had he been told that Count 2—the dismissal of which was the primary incentive for his plea—was legally suspect.

Counsel's performance can provide a fair-and-just reason for withdrawing a guilty plea, but only if the defendant shows deficient performance and prejudice. *United States v. Sisk*, 999 F.3d 631, 635 (8th Cir. 2021). To satisfy the first prong, the defendant must show that his first attorney's representation fell below an objectively reasonable standard. *See id.* For the second prong, the defendant must prove that a reasonable probability exists that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See id.*

To begin with, on the record as it is presented now, the Court is not persuaded that the defendant has shown deficient performance or prejudice in alleging that counsel "incorrectly advised Defendant that Defendant could be found guilty of Count 2 based only on evidence of the proximity of the firearm to drugs." Filing 56 at 5. It is true that

> [t]o satisfy the "in furtherance of" element of § 924(c), the government must present evidence from which a reasonable trier of fact could find a "nexus" between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of furthering, advancing or helping forward the drug crime.

*United States v. Robinson,* 617 F.3d 984, 988 (8th Cir. 2010) (cleaned up). It's also true that "the presence of a gun alone is not enough to prove possession in furtherance of a drug offense." *United States v. Vang,* 3 F.4th 1064, 1067 (8th Cir. 2021).

But what does suffice is "evidence that the defendant's possession of the firearm facilitated the drug crime, through evidence that the firearm was used for protection, *was kept near the drugs, or was in close proximity to the defendant during drug transactions*." *Robinson,* 617 F.3d at 988 (emphasis supplied). That doesn't even require proximity to drugs: "a nexus can exist when a firearm is in proximity to items identified as relating to drug trafficking." *Vang,* 3 F.4th at 1067. The use of firearms to protect the *proceeds* of drug trafficking also violates § 924(c). *United States v. Druger,* 920 F.3d 567, 570 (8th Cir. 2019).

So, in *Robinson,* a loaded handgun's "proximity—within six feet—to saleable quantities of methamphetamine, digital scales, and pills used to manufacture methamphetamine coupled with . . . expert testimony regarding the use of firearms in methamphetamine trafficking could lead a reasonable trier of fact to conclude that [the defendant] possessed that weapon to protect his methamphetamine trafficking activities." 617 F.3d at 989. In *Vang*, the evidence was sufficient where the drugs themselves were located in the basement and the firearm was located two floors above, but in the same room

as drug money and ledgers. 3 F.4th at 1067. In *United States v. Saddler*, the evidence was sufficient when firearms were found

> in close proximity to 701.8 grams of marijuana and 80.26 grams of cocaine, to a safe that contained an additional 122.56 grams of cocaine, 65.42 grams of crack cocaine and $21,514.42 in cash, and to the other parts of the house that contained 2212 grams of marijuana, 597.74 grams of powder cocaine and 217.1 grams of crack cocaine.

538 F.3d 879, 888-89 (8th Cir. 2008). And in *United States v. Sanchez-Garcia*, the jury's verdict was supported when

> [p]olice found the loaded firearm in the apartment's only bedroom, which was directly adjacent to the kitchen where police found quantities of methamphetamine in excess of that associated with personal use and a digital scale of the type commonly employed in the packaging and distribution of methamphetamine. Moreover, [a law enforcement witness] testified as to the role of firearms in protecting drug dealers, their drugs, and their business, a role that this court has long recognized. From the loaded weapon's proximity to saleable quantities of drugs and drug packaging paraphernalia and . . . expert testimony regarding the use of firearms in methamphetamine trafficking, the jury could have reasonably concluded that [the defendant] kept the weapon readily accessible to protect his drugs and his drug trafficking activities, thereby facilitating the charged drug crime. This was sufficient to support his conviction under § 924(c).

461 F.3d 939, 946-47 (8th Cir. 2006) (citation omitted).

To summarize: The proposition that a firearm's proximity to drugs can support a § 924(c) conviction—at least, factually—appears to the Court to be a reasonable reading of the caselaw. The Eighth Circuit has repeatedly found that a firearm in close proximity to drugs is *factually* sufficient to prove the nexus between the firearm and the offense that's *legally* required. For a defense attorney, advising a client that he could be convicted of § 924(c) based on the items found in this defendant's home actually looks like pretty sound advice.[1] The Court has a hard time seeing how it was deficient, or how the defendant could have been prejudiced by it.

The defendant's second argument presents a harder issue. The defendant clearly knew he had a right to plead not guilty, filing 40 at 6, but the Court has found little in the record *to this point* establishing that the defendant specifically knew he had the right to plead guilty or not guilty to one but not all of the charged offenses. And perhaps that misapprehension, if proved, could establish a fair and just reason for withdrawal of a plea.

At that point, the Court would need to consider other factors, such as assertions of innocence, time between plea and attempted withdrawal, and prejudice to the government. *See Sisk*, 999 F.3d at 635. The defendant's assertions of innocence carry little weight: He expressly admitted the factual basis for Count 1 under oath, and even now he admits Count 3. Filing 56 at 6. And several weeks passed after the plea was accepted before moving to withdraw (although, to be fair, the appearance of new counsel would explain

---

[1] The Court notes that at least according to the presentence report, the drugs, gun, and ammunition were found in the same room, with the gun and drugs in the same closet. If the government can prove that….

some of that). But the government hasn't pointed to any prejudice it would suffer as a result of permitting withdrawal. *See* filing 61.

The Court will, accordingly, determine on the record whether the evidence, *after* the hearing, establishes that the defendant misapprehended his legal rights and, if so, whether he should be permitted to withdraw his plea, at least as to Count 1.[2] Those are the questions the Court must answer.

Whether the defendant *should* withdraw his plea is a question only he can answer. But if the Court proceeds to trial on Counts 1 and 2, the government will undoubtedly present significant evidence of drug trafficking, starting with the defendant's admission under oath that he possessed marijuana intending to distribute it. The government will then presumably present evidence that the drugs were found in the defendant's home in the same closet as the gun, and expert testimony about the relationship between guns and drug trafficking. And if the jury finds that the gun and the drugs were related, the defendant will be facing at least an additional 5 years of imprisonment on Count 2, mandatorily consecutive to a sentence for Counts 1 and 3 (which will itself be based on a Guidelines range likely to be in the neighborhood of 46 to 57 months' imprisonment).[3]

But it's not the Court's job to rule on the *wisdom* of the defendant's choices. If the defendant insists on going forward with his motion to withdraw his plea, the Court will rule on it according to the principles set forth above.

---

[2] The defendant's motion is styled as a motion to withdraw his *pleas*, but it certainly looks to the Court like he really only wants to withdraw his plea as to Count 1. There's no point to withdrawing his plea as to Count 3 only to plead guilty to it again.

[3] That's assuming the current presentence report is correct, without the 3-level adjustment for acceptance of responsibility.

IT IS ORDERED that the defendant's motion to withdraw his plea will be submitted on the evidence adduced at the January 12, 2024 hearing.

Dated this 10th day of January, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge