IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>PERRION BLUFORD,<br><br>　　　　　　　Defendant. | 4:23-CR-3056<br><br>TENTATIVE FINDINGS |

The Court has received the revised presentence investigation report in this case. There are no motions for departure or variance. The defendant has objected to the presentence report. Filing 67.

IT IS ORDERED:

1. The Court will consult and follow the Federal Sentencing Guidelines to the extent permitted and required by *United States v. Booker*, 543 U.S. 220 (2005) and subsequent cases. In this regard, the Court gives notice that, unless otherwise ordered, it will:

    (a) give the advisory Guidelines respectful consideration within the context of each individual case and will filter the Guidelines' advice through the 18 U.S.C. § 3553(a) factors, but will not afford the Guidelines any particular or "substantial" weight;

    (b) resolve all factual disputes relevant to sentencing by the greater weight of the evidence and without the aid of a jury;

  (c)  impose upon the United States the burden of proof on all Guidelines enhancements;

  (d)  impose upon the defendant the burden of proof on all Guidelines mitigators;

  (e)  depart from the advisory Guidelines, if appropriate, using pre-*Booker* departure theory; and

  (f)  in cases where a departure using pre-*Booker* departure theory is not warranted, deviate or vary from the Guidelines when there is a principled reason justifying a sentence different than that called for by application of the advisory Guidelines, again without affording the Guidelines any particular or "substantial" weight.

2. There are no motions that require resolution at sentencing. The defendant has objected to several paragraphs of the presentence report, but all the objections hinge on the same argument: That 79 pills suspected to be MDMA, but which apparently weren't, shouldn't be included in the drug quantity for purposes of calculating the offense level for possession of marijuana with intent to deliver. Filing 67. The defendant's objection, at least on the present record, has merit.

 The defendant was arrested with 79 pills suspected to be MDMA, and 1.45 kg of suspected marijuana. The presentence report describes how initially, the drugs seized from the defendant tested negative for controlled substances, but a later sample tested positive for marijuana. According to the defendant, the pills were found not to be a controlled substance. Filing 67 at 1. And that's consistent with the following passage from the prosecutor's version of the offense:

> The investigator would further explain that those involved in selling drugs sometimes sell counterfeit drugs. Counterfeit drugs can be obtained at a lower cost because they are not illegal. Those involved in selling drugs will sometimes sell both actual and counterfeit drugs to their customers and pass the counterfeit drugs off as actual drugs and sell them at the market price for illegal drugs.

Nonetheless, the presentence report includes those pills in the drug quantity calculation, and they matter—if they were MDMA, their converted drug weight would be the equivalent of 9.88 kg of marijuana. According to the presentence report, "counterfeit" drugs are still included in the guidelines calculation.

But these pills—unless evidence is adduced showing that they're a controlled substance of some kind—aren't "counterfeit" drugs within the applicable definition. True, U.S.S.G. § 2D1.1—the guideline establishing the base offense level for controlled substance offenses—does apply to "'counterfeit' substances, which are defined in 21 U.S.C. § 802 to mean controlled substances that are falsely labeled so as to appear to have been legitimately manufactured or distributed." § 2D1.1, cmt. n.4. But that definition, found in 21 U.S.C. § 802(7), states that

> The term "counterfeit substance" means a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured,

> distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

In other words, a "counterfeit" controlled substance is still a *controlled substance*—just not the controlled substance it's purported to be.[1] A substance which appears to be a controlled substance, but actually isn't, also isn't a "counterfeit" controlled substance within the definition found in § 802(7) or § 2D1.1 cmt. n.4. *See United States v. Thomas,* 939 F.3d 1121, 1126 (10th Cir. 2019) (every counterfeit substance is already a controlled substance; a counterfeit substance is simply a controlled substance that is mislabeled to conceal its origin); *United States v. Sampson,* 140 F.3d 585, 589 (4th Cir. 1998) (fake cocaine made from wax, flour and baking soda was not a "counterfeit substance" under § 802(7)); *United States v. Franklin,* 125 F.3d 851 (5th Cir. 1997) (a "simulated controlled substance" is not a "counterfeit substance" under the Guidelines); *United States v. Cooper,* 121 F.3d 130, 134 (3d Cir. 1997) (if a substance is not a "controlled substance," it cannot be a "counterfeit substance" within the meaning of § 802(7)); *cf. United States v. Brown,* 598 F.3d 1013, 1016 (8th Cir. 2010) (Congress has never regulated simulated or look-alike controlled substances).

---

[1] The parlance seems to be this: a "counterfeit" controlled substance is a controlled substance being passed off as something else—say, fentanyl pills labeled with a brand name for oxycodone or alprazolam. But a *fake* controlled substance, which isn't actually controlled at all, is a "look-alike" or "simulated" controlled substance.

- 4 -

> For that reason, the Court finds the defendant's objection to have merit, at least at this point. If, indeed, there is no evidence that the suspected MDMA pills were *some* kind of controlled substance, then those pills don't count towards the drug quantity calculation and base offense level for Count I. And as far as the Court can tell, the defendant's calculations based on that objection—that without the pills, the defendant's guidelines range would be 27 to 33 months—appear to be correct.
>
> The government bears the burden to prove drug quantity by a preponderance of the evidence. *United States v. Young*, 689 F.3d 941, 945 (8th Cir. 2012). Accordingly, the Court will make a final ruling on the defendant's objection based on the evidence at sentencing.

3.  Except to the extent, if any, that the Court has sustained an objection, granted a motion, or reserved an issue for later resolution in the preceding paragraph, the parties are notified that the Court's tentative findings are that the presentence report is correct in all respects.

4.  If any party wishes to challenge these tentative findings, that party shall, as soon as possible (but in any event no later than three (3) business days before sentencing) file with the Court and serve upon opposing counsel an objection challenging these tentative findings, supported by a brief as to the law and such evidentiary materials as are required, giving due regard to the local rules of practice governing the submission of evidentiary materials. If an evidentiary hearing is requested, such filings should include a statement describing why a hearing is necessary and how long such a hearing would take.

5. Absent timely submission of the information required by the preceding paragraph, the Court's tentative findings may become final and the presentence report may be relied upon by the Court without more.

6. Unless otherwise ordered, any objection challenging these tentative findings shall be resolved at sentencing.

Dated this 31st day of January, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge